UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHELLE R. CLOWERS, | ) |
| | ) CASE NO. C13-0539-RSL-MAT |
| Plaintiff, | ) |
| | ) |
| v. | ) REPORT AND RECOMMENDATION |
| | ) RE: SOCIAL SECURITY DISABILITY |
| CAROLYN W. COLVIN, Acting | ) APPEAL |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |
| _____ | ) |

Plaintiff Michelle R. Clowers proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner).  The Commissioner denied plaintiff's application for Supplemental Security Income (SSI) after a hearing before an Administrative Law Judge (ALJ).  Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends this matter be AFFIRMED.

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1958.[1]  She completed college and has minimal work

_____

1 Plaintiff's date of birth is redacted back to the year of birth in accordance with Federal Rule of

REPORT & RECOMMENDATION
PAGE -1

01   history.   (*See* AR 69-73.)

02          Plaintiff filed an application for SSI in March 2010, alleging disability beginning

03   October March 1, 2005.   (AR 162-65.)   Her application was denied initially and on

04   reconsideration, and she timely requested a hearing.

05          ALJ Laura Valente held a hearing on August 4, 2011, taking testimony from plaintiff

06   and a vocational expert.   (AR 35-81.)   On October 19, 2011, the ALJ rendered a decision

07   finding plaintiff not disabled.   (AR 14-26.)

08          Plaintiff timely appealed.   The Appeals Council denied plaintiff's request for review

09   on January 25, 2013 (AR 1-3), making the ALJ's decision the final decision of the

10   Commissioner.   Plaintiff appealed this final decision of the Commissioner to this Court.

11                                    **JURISDICTION**

12          The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

13                                    **DISCUSSION**

14          The Commissioner follows a five-step sequential evaluation process for determining

15   whether a claimant is disabled.   *See* 20 C.F.R. §§ 404.1520, 416.920 (2000).   At step one, it

16   must be determined whether the claimant is gainfully employed.   The ALJ found plaintiff had

17   not engaged in substantial gainful activity since March 1, 2010, the application date.   At step

18   two, it must be determined whether a claimant suffers from a severe impairment.   The ALJ

19   found only plaintiff's posttraumatic stress disorder (PTSD) severe.   Step three asks whether a

20   claimant's impairments meet or equal a listed impairment.   The ALJ found plaintiff's

21   impairments did not meet or equal the criteria of a listed impairment.

22   ────────────────────────────────────────────────────────

Civil Procedure 5.2(a) and the General Order of the Court regarding Public Access to Electronic Case
Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

REPORT & RECOMMENDATION
PAGE -2

01     If a claimant's impairments do not meet or equal a listing, the Commissioner must

02 assess residual functional capacity (RFC) and determine at step four whether the claimant has

03 demonstrated an inability to perform past relevant work.   The ALJ found plaintiff had the RFC

04 to perform light work, with additional limitations:   she can lift twenty pounds occasionally and

05 ten pounds frequently; she has no restrictions in sitting, standing, or walking; she can perform

06 all postural functions on an occasional basis; she can work with written materials so long as the

07 work involves reading up close, while distance reading, such as reading signs, is not possible;

08 and she should not drive or operate machinery such as forklifts.   The ALJ also found plaintiff:

09 can understand, remember, and carry out simple, routine tasks and detailed tasks; can work

10 superficially with the general public, i.e., can be in the same room or vicinity as the general

11 public, but cannot respond to their demands or requests other than to refer them to someone

12 else; and can also work superficially with co-workers, allowing her to be in the same room or

13 vicinity, but not able to work in coordination with them.   With that RFC, the ALJ found

14 plaintiff unable to perform past relevant work as a social worker.

15     If a claimant demonstrates an inability to perform past relevant work or has no past

16 relevant work, the burden shifts to the Commissioner to demonstrate at step five that the

17 claimant retains the capacity to make an adjustment to work that exists in significant levels in

18 the national economy.   The ALJ concluded plaintiff could perform jobs existing in significant

19 numbers in the national economy, such as work as a stuffer, table worker, and housekeeper.

20 The ALJ, therefore, concluded plaintiff had not been under a disability from March 1, 2010

21 through the date of the decision.

22     This Court's review of the final decision is limited to whether the decision is in

REPORT & RECOMMENDATION
PAGE -3

01 accordance with the law and the findings supported by substantial evidence in the record as a

02 whole.  *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993).  Substantial evidence means

03 more than a scintilla, but less than a preponderance; it means such relevant evidence as a

04 reasonable mind might accept as adequate to support a conclusion.  *Magallanes v. Bowen*, 881

05 F.2d 747, 750 (9th Cir. 1989).  If there is more than one rational interpretation, one of which

06 supports the final decision, the Court must uphold that decision.  *Thomas v. Barnhart*, 278

07 F.3d 947, 954 (9th Cir. 2002).

08         Plaintiff argues the ALJ erred at step two, in assessing her credibility, in rejecting a lay

09 statement, and rejecting the opinions of treating and evaluating providers.  She requests

10 remand for further administrative proceedings.  The Commissioner argues the ALJ's decision

11 is supported by substantial evidence and should be affirmed.

12                                    <u>Step Two</u>

13         At step two, a claimant must make a threshold showing that her medically determinable

14 impairments significantly limit her ability to perform basic work activities.  *See Bowen v.*

15 *Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c).  "Basic work

16 activities" refers to "the abilities and aptitudes necessary to do most jobs."  20 C.F.R. §§

17 404.1521(b), 416.921(b).  "An impairment or combination of impairments can be found 'not

18 severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal

19 effect on an individual's ability to work.'"  *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir.

20 1996 (quoting Social Security Ruling (SSR) 85-28).  "[T]he step two inquiry is a de minimis

21 screening device to dispose of groundless claims."  *Id*. (citing *Bowen*, 482 U.S. at 153-54).

22 An ALJ is also required to consider the "combined effect" of an individual's impairments in

01 considering severity. *Id.* A diagnosis alone is not sufficient to establish a severe impairment.

02 Instead, a claimant must show that her medically determinable impairments are severe. 20

03 C.F.R. §§ 404.1520(c), 416.920(c).

04 A.   Personality Disorder

05    Plaintiff first argues step two error in relation to a personality disorder. The ALJ

06 discussed plaintiff's alleged history of bipolar disorder and concluded it was not established for

07 the time period after the protective filing date, but did not address a personality disorder at step

08 two. (AR 17.) Plaintiff points to support for the existence of a severe personality disorder in

09 medical opinions and in various reports as to her difficulty with anger. (Dkt. 12 at 4.) She

10 contends that, with proper determination of her impairments, the ALJ would likely have

11 reached a different credibility determination through consideration of her anger symptoms as

12 related to either personality disorder or pain and fatigue symptoms of fibromyalgia.

13    A step two severe impairment must result from anatomical, physiological, or

14 psychological abnormalities which can be shown by medically acceptable clinical and

15 laboratory diagnostic techniques, and established by medical evidence consisting of signs,

16 symptoms, and laboratory findings, not only by the claimant's statement of symptoms. 20

17 C.F.R. §§ 404.1508, 416.908. This requirement presupposes the existence of an actual

18 diagnosis. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1005-06 (9th Cir. 2005) (noting SSR 96-6p

19 "provides that a medical opinion offered in support of an impairment must include 'symptoms

20 [and a] *diagnosis*.'") (emphasis in original).

21    Plaintiff's argument unsuccessfully relies on evidence from examining physician Dr.

22 Linda Ford, reviewing State Agency consultant Dr. Thomas Clifford, and mental health

REPORT & RECOMMENDATION
PAGE -5

01  practitioner Catherine Naiad, as none of these individuals diagnosed plaintiff with a personality

02  disorder.   Drs. Ford and Clifford included diagnoses of "[rule out] Cluster B Traits" (AR 488,

03  502), while Naiad stated "hints of personality disorder" was an "area need[ing] further

04  assessment."   (AR 676.)   These possible diagnoses do not demonstrate a severe impairment.

05  *Carrasco v. Astrue*, No. ED CV 10-0043 JCG, 2011 U.S. Dist. LEXIS 12637 at*12-13 (C.D.

06  Cal. Feb. 8, 2011) ("A 'rule-out' diagnosis is by no means a diagnosis. In the medical context, a

07  'rule-out' diagnosis means there is evidence that the criteria for a diagnosis may be met, but

08  more information is needed in order to rule it out.") (cited cases omitted).

09      The record does contain December 2009 and December 2010 diagnoses of borderline

10  personality disorder from examining physician Dr. Geordie Knapp.   (AR 608, 615.)

11  However, the ALJ recognized those diagnoses and rejected the opinions of Dr. Knapp at step

12  four.   Of particular import to the step two argument, the reasons given for the rejection of Dr.

13  Knapp's opinions included that they appeared to be based on plaintiff's subjective reports,

14  rather than objective examination findings, and were inconsistent with the results of

15  mini-mental status examinations conducted, "which were 29/30 in December 2009 and 30/30 in

16  December 2010."   (AR 24.)   As discussed further below, the ALJ properly rejected the

17  opinion evidence from Dr. Knapp based on these and other reasons.   *See*, *e.g.*, *Tommasetti v.

18  Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (an ALJ may reject a physician's opinion "if it is

19  based 'to a large extent' on a claimant's self-reports that have been properly discounted as

20  incredible."); *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (rejecting physician's

21  opinion due to discrepancy or contradiction between opinion and the physician's own notes or

22  observations is "a permissible determination within the ALJ's province.").   Further, as the

REPORT & RECOMMENDATION
PAGE -6

01   Commissioner argues, the diagnoses from Dr. Geordie lacked the support of clinical findings,

02   and were, therefore, insufficient to support the existence of a severe impairment.   20 C.F.R. §

03   404.1528(a) (symptoms alone not enough to establish impairment) and (b) ("Signs" are

04   "anatomical, physiological, or psychological abnormalities which can be observed, apart from

05   the claimant's statements (symptoms)[,]" and "must be shown by medically acceptable clinical

06   diagnostic techniques."); *Ukolov*, 420 F.3d at 1005 (a medically determinable impairment must

07   be established by medical evidence consisting of signs, symptoms, and laboratory findings, and

08   "'under no circumstances" may an impairment be established based on symptoms alone)

09   (quoting SSR 96-4p).

10          Nor does plaintiff otherwise demonstrate reversible error.   An ALJ's error may be

11   deemed harmless where it is "'inconsequential to the ultimate nondisability determination.'"

12   *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cited sources omitted).   The Court

13   looks to "the record as a whole to determine whether the error alters the outcome of the case."

14   *Id*.

15          Plaintiff points to her "difficulty with anger" and contends the credibility assessment

16   would have been different upon a step two consideration of personality disorder.   However,

17   the ALJ in this case found plaintiff's PTSD severe, provided a step two analysis of bipolar

18   disorder supported by substantial evidence, adequately addressed the diagnoses of personality

19   disorder given by Dr. Geordie at step four, and, as discussed below, provided numerous clear

20   and convincing reasons for finding plaintiff less than fully credible.   The ALJ also accounted

21   for plaintiff's anger symptoms by assessing social limitations in the RFC.   *See Lewis v. Astrue*,

22   498 F.3d 909, 911 (9th Cir. 2007) (failure to list an impairment as severe at step two may be

REPORT & RECOMMENDATION
PAGE -7

01  deemed harmless where the ALJ considers associated limitations at step four); *Burch v.*

02  *Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005) (even assuming omission of consideration of

03  condition at step two constituted error, "it could only have prejudiced" the claimant at steps

04  three or five "because the other steps, including [step two], were resolved in her favor.")

05  Therefore, assuming error in the failure to address personality disorder at step two, that error

06  can be deemed harmless.

07  B.    Fibromyalgia

08      The ALJ did consider fibromyalgia at step two:

09      The claimant contends that fibromyalgia causes functional limitations.  She
        testified that she has constant pain, and stated that her left leg has buckled.  In
10      March 2010 rheumatologist Andrew Sohn, M.D., examined the claimant and
        concluded that he agreed with a diagnosis of fibromyalgia, but noted that it was
11      a "diagnosis of exclusion."  Dr. Sohn noted the presence of diffuse
        muscoskeletal tenderness, but did not identify the specific tender points required
12      for diagnosis of fibromyalgia by the American College of Rheumatology ([AR
        278-80]).  In addition, the identification of these tender points is not found
13      anywhere in the medical record, and the diagnoses of fibromyalgia appear based
        on the claimant's reports.  Treatment records from March 2010 show that the
14      claimant was not reporting any fibromyalgia symptoms at that time ([AR 297,
        303]).  Therefore, the undersigned finds that this impairment is not established
15      by the medical evidence.

16  (AR 17.)   As with personality disorder, plaintiff fails to support reversible error.

17      SSR 12-2p sets forth the criteria for establishing whether a claimant has a medically

18  determinable impairment (MDI) of fibromyalgia (FM).[2]  Beyond a diagnosis from a physician,

19  a claimant must provide evidence satisfying one of two different sets of criteria – based on 1990

20  and 2010 criteria from the American College of Rheumatology (ACR) respectively – and the

21      2  The ALJ rendered her decision on October 19, 2011 and was not bound by SSR 12-2p, which
    went into effect July 25, 2012.  *See Paulson v. Bowen*, 836 F.2d 1249, 1252 n.2 (9th Cir. 1988) ("Once
22  *published*, a ruling is binding upon ALJs and is to be relied upon as precedent in determining cases
    where the facts are basically the same.") (emphasis added).   However, because the ruling pre-dated the
    Appeals Council's decision, it is considered herein.

REPORT & RECOMMENDATION
PAGE -8

01  diagnosis must not be "inconsistent with other evidence in the person's case record."  *Id*.

02       To satisfy the first set of criteria, a claimant must have:  (1) a history of widespread

03  pain; that is, pain in all quadrants of the body (right and left sides, above and below waist) and

04  axial skeletal pain (cervical spine, anterior chest, thoracic spine, or low back) that has persisted

05  for at least 3 months; (2) at least eleven positive tender points on physical examination found

06  bilaterally and above and below waist; and (3) evidence other disorders that could cause the

07  symptoms or signs were excluded.  *Id*.   The eighteen tender points used in a FM diagnosis are

08  located on both sides of the body and include:   occiput (base of skull); lower cervical spine

09  (back and side of neck); trapezius muscle (shoulder); supraspinatus muscle (near shoulder

10  blade); second rib (top of rib cage near sternum or breast bone); lateral epicondyle (outer aspect

11  of elbow); gluteal (top of buttock); greater trochanter (below hip); and inner aspect of knee.

12  SSR 12-2p.   To satisfy the second set of criteria, a claimant must have:  (1) history of

13  widespread pain (as above); (2) repeated manifestations of six or more FM symptoms, signs, or

14  co-occurring conditions, especially fatigue, cognitive or memory problems, waking

15  unrefreshed, depression, anxiety disorder, or irritable bowel syndrome; and (3) evidence other

16  disorders that could cause those manifestations were excluded.  *Id*.

17       Plaintiff contends the evidence from Dr. Sohn meets the diagnostic criteria required for

18  a FM diagnosis:

19       There is no evidence of synovitis in terms of joint swelling, warmth or redness
          throughout.   Right hand has mild tenderness along the PIPs, without swelling.

20       Remainder of bilateral hands and wrists reveal no synovitis or tenderness.   The
          forearms and elbow are generally tender without synovitis.   Upper arms are

21       generally tender.   Shoulders have full range of motion.   Neck range of motion
          appears unremarkable.   There is tenderness of the neck, upper mid to the low

22       back and palpation was done with minimum amount of pressure and she was
          tender.   The back forward flexion appears somewhat limited but extension is

REPORT & RECOMMENDATION
PAGE -9

01          fine.   She has tenderness along the sides of the hips and thighs.   The knees are
            tender diffusely, including the medial aspects as well as anteriorly.   The calves
02          are tender.

03      (AR 280.)   However, Dr. Sohn did not clearly identify tenderness in eleven out of eighteen

04      tender points.   Instead, while clearly finding tenderness on plaintiff's elbows and knees, he

05      otherwise found:   tenderness on plaintiff's "[u]pper arms," with no indication of a finding at

06      the supraspinatus muscle (near the shoulder blade); tenderness "along the sides of the hips,"

07      with no indication of a finding at the greater trochanter (below the hip); and tenderness of the

08      neck, with no indication as to findings at both the back and sides of the neck.   Because the

09      ALJ's interpretation of the evidence from Dr. Sohn can be deemed rational, it should not be

10      overturned.   *Morgan v. Commissioner of the SSA*, 169 F.3d 595, 599 (9th Cir. 1999) ("Where

11      the evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion

12      that must be upheld.") (citing *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995)).

13          Plaintiff argues that, if she felt the evidence from Dr. Sohn was ambiguous or

14      inadequate, the ALJ had a duty to develop the record and conduct an appropriate inquiry.   *See*

15      20 C.F.R. §§ 404.1512(e), 416.912(e) (ALJ obligated to recontact a treating physician or

16      psychologist when the evidence received is inadequate for a determination of disability) and

17      *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001) ("ALJ's duty to develop the record

18      further is triggered only when there is ambiguous evidence or when the record is inadequate to

19      allow for proper evaluation of the evidence."); *accord Tonapetyan v. Halter*, 242 F.3d 1144,

20      1150 (9th Cir. 2001).   She also notes the recognition in SSR 12-2p that a consultative

21      examination may be purchased where there is insufficient evidence to determine a MDI of FM.

22          The ALJ did not rely solely on Dr. Sohn's failure to identify the necessary tender points.

REPORT & RECOMMENDATION
PAGE -10

01   She also noted Dr. Sohn's observation that he gave a "diagnosis of exclusion[,]" that the record

02   did not otherwise reveal identification of tender points, that the diagnoses of FM "appear based

03   on the claimant's report[,]" and that March 2010 treatment records show plaintiff "was not

04   reporting any fibromyalgia symptoms at that time ([AR 297, 303]).  (AR 17.)   One of the

05   records cited by the ALJ does include a notation reflecting plaintiff's report of FM symptoms.

06   (AR 303 ("Having pain in Fibromyalgia and TMJ."))   However, even recognizing this fact and

07   further assuming the failure to identify FM as a severe condition and/or to further develop the

08   record constituted error, such error can be deemed harmless.  *See Molina*, 674 F.3d at 1115.

09          While not finding plaintiff's FM severe at step two, the ALJ proceeded to consider the

10   condition in the remainder of the sequential evaluation.   The ALJ later considered Dr. Sohn's

11   opinions at step four, affording "little weight" to the FM diagnosis:  "As he noted, this is a

12   diagnosis of exclusion.   Furthermore, his analysis does not include identification of the

13   specific tender points required for fibromyalgia diagnosis."  (AR 23.)   As discussed further

14   below, the ALJ also gave no weight to the opinion of Dr. Mark Jabbusch (spelled Jubhers in the

15   ALJ's decision), who assessed significant functional limitations due to FM, finding it not

16   consistent with the evidence and plaintiff's proven capabilities, and noting the absence of any

17   evidentiary basis for the analysis.   (AR 23 (discussing AR 632-36).)   However, the ALJ gave

18   substantial weight to the opinion of reviewing physician Dr. Dennis Koukol, who affirmed the

19   diagnosis of FM and found plaintiff limited to light work.  (AR 20, 22, 477-84, 601.)   The

20   ALJ concluded that, while the objective evidence did not establish the severity of the

21   impairment, the record did "support the finding that the claimant's impairments limit her to

22

01    light work."   (AR 22; *see also* AR 20.)[3]

02          As the Commissioner observes, plaintiff fails to identify functional limitations caused

03    by FM that the ALJ failed to include in the RFC.   In addition, while the ALJ limited plaintiff to

04    light work, she also identified sedentary positions plaintiff could perform at step five.   (AR

05    25.)   As with the light work assessment, plaintiff does not identify or provide sufficient support

06    for functional limitations associated with her FM precluding her performance of such positions.

07          Plaintiff also argues the Appeals Council erred by failing to evaluate her FM based on

08    the 2010 ACR criteria set forth in SSR 12-2p.   However, plaintiff does not set forth evidence

09    supporting a diagnosis under that criteria.   In particular, while maintaining the record reveals

10    repeated manifestation of six or more FM symptoms, signs, or co-occurring conditions,

11    plaintiff identifies only four such factors, namely, fatigue, headaches, depression, and

12    temporomandibular joint disorder.   (*See* Dkt. 12 at 7-8.)   Moreover, and again, it remains that

13    the ALJ did consider and account for plaintiff's FM in the subsequent steps of the sequential

14    evaluation.   For this reason, and for the reasons discussed above, plaintiff fails to demonstrate

15    reversible error in relation to FM.

16                                            Credibility

17          Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

18    reject a claimant's testimony.   *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007)

19    (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)).   *See also Vertigan v. Halter*,

20    _____

21          3 Plaintiff's contention that this was error in that it relied on her self-report of symptoms is not
      well taken.   (Dkt. 12 at 6, n.2.)   The ALJ must consider the limiting effects of all of plaintiff's
      impairments, including those not severe, in determining RFC. §§ 404.1545(e), 416.945(e); SSR 96-8p.

22    Further, where the ALJ "is unable to determine clearly the effect of an impairment(s) on the individual's
      ability to do basic work activities," she "must continue to follow the sequential evaluation process until
      a determination or decision about disability can be reached."   SSR 96-3p; *accord* SSR 85-28.

01  260 F.3d 1044, 1049 (9th Cir. 2001).  "General findings are insufficient; rather, the ALJ must

02  identify what testimony is not credible and what evidence undermines the claimant's

03  complaints."  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1996).  "In weighing a claimant's

04  credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either in his

05  testimony or between his testimony and his conduct, his daily activities, his work record, and

06  testimony from physicians and third parties concerning the nature, severity, and effect of the

07  symptoms of which he complains."  *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.

08  1997).

09         The ALJ in this case found plaintiff's impairments could be reasonably expected to

10  cause some of the alleged symptoms, but that her statements concerning the intensity,

11  persistence, and limiting effects of those symptoms were not credible to the extent inconsistent

12  with the assessed RFC.  As set forth below, the ALJ provided a number of clear and

13  convincing reasons for her determination.

14  A.    Lack of Treatment

15         The ALJ observed a "lengthy gap" in the evidence, "with no record available from

16  December 2005 to January 2009."  (AR 20.)  She noted this period included a time during

17  which plaintiff alleged she was hospitalized after attempting suicide.  (*Id.* (citing AR 614).)

18  The ALJ found the gap to suggest plaintiff's symptoms "were not severe during that time

19  period."  (*Id.*)

20         As plaintiff concedes, an ALJ appropriately considers an unexplained or inadequately

21  explained failure to seek treatment in assessing credibility, *Tommasetti*, 533 F.3d at 1039, and

22  the claimant bears the burden of producing evidence to support her disability, *see generally*

01  *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999).   However, plaintiff argues that, before

02  finding her not credible for lack of treatment, the ALJ was obligated to determine if records

03  were available.   *See Tonapetyan*, 242 F.3d at 1150.   Yet, plaintiff does not support the

04  existence of an ambiguity or finding of inadequacy triggering the ALJ's duty to further develop

05  the record.   *Id.*; *accord Mayes*, 276 F.3d at 459-60.   As the Commissioner observes, the ALJ

06  asked and was informed by plaintiff's counsel that the medical evidence presented at hearing

07  "comprise[d] the entire record."   (AR 39.)   Plaintiff, therefore, fails to demonstrate error in

08  the ALJ's consideration of the gap in the record.

09  B.   <u>Activities of Daily Living</u>

10       The ALJ found plaintiff's allegations of physical disability undermined by her activity

11  level, including evidence of regular exercise, the ability to perform household chores, such as

12  laundry and cooking, and a reference in the record to her retrieving a cat from a tree.   (AR 20.)

13  She found these activities "not consistent with the presence of disabling pain," and supporting a

14  finding plaintiff could work at the light exertion level.   (*Id.*)

15       The ALJ similarly determined plaintiff's activities of daily living and demonstrated

16  functional ability indicated her mental symptoms were not as limiting as alleged.   (AR 21.)

17  She pointed to plaintiff's testimony and other evidence in the record showing her ability to care

18  for herself and her cat, to perform basic cleaning tasks, that she does the majority of cooking,

19  "quilts, sews, crotchets, and does cross-stitch[,]" and "is able to read and understand novels

20  without difficulty."   (*Id.*)   The ALJ found this evidence to show plaintiff "is able to

21  concentrate and persist on tasks, consistent with an ability to work."   (*Id.*)   The ALJ also

22  found evidence plaintiff had friends when living in Oklahoma, and her testimony of "no

01  problems interacting with people now" and that she currently has a friend with whom she goes

02  grocery shopping, as demonstrating her "ability to function socially at least at the level

03  indicated" in the assessed RFC.   (*Id.*)

04          Plaintiff takes issue with the activities identified by the ALJ, arguing, for example, that

05  neither a one-time activity of rescuing a cat which resulted in an injury (AR 62, 593), nor that

06  she cross-stitches for an hour at a time "once in a great while[]" (AR 51), serve as clear and

07  convincing reasons to find her less than fully credible, nor suffices to demonstrate she can

08  sustain a full time job.   She notes the Ninth Circuit's recognition that "the mere fact that a

09  plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or

10  limited walking for exercise, does not in any way detract from her credibility as to her overall

11  disability.   One does not need to be 'utterly incapacitated' in order to be disabled."   *Vertigan*

12  *v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) (quoting *Fair v. Bowen*, 885 F.2d 597, 603 (9th

13  Cir. 1989).)

14          However, as also found by the Ninth Circuit:

15          While a claimant need not "'vegetate in a dark room'" in order to be eligible for
            benefits, the ALJ may discredit a claimant's testimony when the claimant
16          reports participation in everyday activities indicating capacities that are
            transferable to a work setting.   Even where those activities suggest some
17          difficulty functioning, they may be grounds for discrediting the claimant's
            testimony to the extent that they contradict claims of a totally debilitating
18          impairment.

19  *Molina*, 674 F.3d at 1112-13 (citations omitted).   The ALJ here properly took note of

20  inconsistencies between plaintiff's assertions as to the degree of her limitations and evidence in

21  the record.   *See Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007) (noting "two grounds for

22  using daily activities to form the basis of an adverse credibility determination[,]" including (1)

REPORT & RECOMMENDATION
PAGE -15

01   whether the activities contradict the claimant's testimony and (2) whether the activities "meet

02   the threshold for transferable work skills[.]") (citing *Fair*, 885 F.2d at 603). The ALJ, for

03   example, reasonably considered evidence plaintiff exercised regularly (AR 546), given her

04   assertion she is "in constant pain all the time[]" (AR 43), and her testimony she could read and

05   understand entire novels and had no problems getting along with others (AR 50-51, 63), given

06   assertions of marked impairments in concentration, persistence, and pace and in social

07   functioning (AR 41). Plaintiff fails to demonstrate any error in the ALJ's consideration of her

08   daily activities as undermining her credibility.

09   C.      Lack of Objective Evidence and Contradictory Evidence

10          Plaintiff avers that, given the invalidity of the other reasons proffered, the ALJ's

11   reliance on a lack of supportive objective evidence cannot serve as a clear and convincing

12   reason to find her not credible. *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) ("'Once

13   the claimant produces medical evidence of an underlying impairment, the Commissioner may

14   not discredit the claimant's testimony as to subjective symptoms merely because they are

15   unsupported by objective evidence.'") (quoting *Lester*, 81 F.3d at 834). However, as

16   discussed above and below, plaintiff fails to demonstrate reversible error in the ALJ's

17   credibility reasoning. There would, consequently, be no error in a reliance on a lack of

18   supporting objective evidence. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001)

19   ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully

20   corroborated by objective medical evidence, the medical evidence is still a relevant factor in

21   determining the severity of the claimant's pain and its disabling effects."); *accord* SSR 96-7p.

22          In any event, the ALJ did not find plaintiff less than fully credible based on a lack of

01 objective support.   She, instead, properly pointed to and relied on the existence of

02 contradictory medical evidence in the record.   *Carmickle v. Comm'r of SSA*, 533 F.3d 1155,

03 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting

04 the claimant's subjective testimony.") (citing *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir.

05 1995)).   The evidence relied upon included assessments from Drs. Clifford and Ford, and

06 treatment records from Therapy Consultants.   (AR 20-21.)

07          Plaintiff argues the ALJ did not identify and discuss other evidence in the record

08 favorable to her claim, such as lower Global Assessment of Functioning (GAF) scores and

09 observations in the treatment notes.   However, the ALJ, as described below, properly

10 supported her assessment of the medical opinion evidence, including the lower GAF scores.

11 She further explained her reliance on contradictory evidence in the record by noting that

12 "*[o]verall*, the treatment records support Dr. Ford's and Dr. Clifford's opinions."   (AR 21

13 (emphasis added).)   Contrary to plaintiff's contention the ALJ's decision reflects neither

14 selective consideration of the record, not reliance on a slim quantum of evidence.   *See*

15 *Lingenfelter*, 504 F.3d at 1035 (ALJ must consider "entire record as a whole, 'weighing both

16 the evidence that supports and the evidence that detracts from the Commissioner's conclusion,'

17 and 'may not affirm simply by isolating a specific quantum of supporting evidence.'") (quoted

18 sources omitted).   Instead, the ALJ's decision shows consideration of the record as a whole,

19 and the existence of substantial evidence support for the conclusions reached.

20 D.      Drug-Seeking Behavior

21          The ALJ found evidence of drug-seeking behavior to diminish plaintiff's credibility.

22 (AR 21.)   Plaintiff maintains the ALJ inaccurately describes one of the records as reflecting the

01  prescription of Valium "despite no clinical findings" (AR 21), noting she was, in fact,

02  diagnosed with "fatigue due to sleep deprivation[]" (AR 246), and had reported to her providers

03  that Valium helped her sleep (AR 265).   Yet, the ALJ acknowledged plaintiff requested the

04  valium to help her sleep (AR 21), and plaintiff does not identify any clinical findings in the

05  record at issue, only her report of fatigue.

06        Plaintiff also points to her testimony she went to the emergency room to get pain

07  medication because she lacked medical insurance as explaining these incidents (AR 56-57), and

08  describes the reasoning of the ALJ, and observations in the records, as no more than suspicions.

09  However, the ALJ persuasively identified a number of incidents in which plaintiff received

10  narcotic pain medication in the absence of objective clinical findings (*see*, *e.g.*, AR 260-61),

11  incidents in which medical providers suspected or noted suspected drug-seeking behavior (AR

12  644, 654), and an incident in which plaintiff was observed to have displayed behavior

13  inconsistent with her pain complaints (AR 637).   While plaintiff takes a different view of the

14  evidence, the ALJ's consideration of evidence reflecting drug-seeking behavior was rational

15  and appropriate.   *Massey v. Comm'r SSA*, No. 10-35004, 2010 U.S. App. LEXIS 21508 at * 2

16  (9th Cir. Oct. 19, 2010) (ALJ's interpretation of record that claimant engaged in drug-seeking

17  behavior is a clear and convincing reason for disregarding his testimony); *Edlund v. Massanari*,

18  253 F.3d 1152, 1157 (9th Cir. 2001), *amended opinion* at 2001 U.S. App. LEXIS 17960 (Aug.

19  9, 2001) (ALJ properly considered evidence of exaggeration of pain to receive pain medication

20  in credibility assessment).

21  E.      Inconsistent Statements and Activities

22        The ALJ first noted plaintiff's testimony at hearing that she ran out of bipolar

01  medications because she could not afford them and did not try to obtain samples because she

02  was not aware she could do so, while shortly thereafter testifying she received free samples of

03  Ambien from her doctor.  (AR 22, 56-60.)  Plaintiff persuasively argues that her testimony as

04  a whole can be read as reflecting her belief she was unaware she could obtain samples of bipolar

05  medications from someone other than a treating physician or care provider.  (*See* AR 54-57

06  and AR 80 ("Q.  . . .  So you went to the emergency room for pain medications, but you didn't

07  go for bipolar medication?  Is there a reason that you went for one and not the other?  A.  I

08  figured they wouldn't do anything about my bipolar, that I'd have to actually see somebody to

09  get it."))  However, any error in the consideration of this evidence can be deemed harmless

10  given the other reasons proffered by the ALJ.  *See Carmickle*, 533 F.3d at 1162-63.

11       An ALJ may consider "ordinary techniques of credibility evaluation, such as the

12  claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and

13  other testimony by the claimant that appears less than candid[.]"  *Smolen*, 80 F.3d at 1284.

14  An ALJ also appropriately considers inconsistencies or contradictions between a claimant's

15  statements and her activities.  *Tonapetyan*, 242 F.3d at 1148; *Thomas*, 278 F.3d at 958-59.

16  The ALJ here considered various factors, inconsistencies, and contradictions in the record and

17  in plaintiff's testimony as undermining her credibility, and as showing her allegations of

18  disabling symptoms were "not congruent with what she describes as her typical activities and

19  behavior."  (AR 22.)

20       The ALJ observed that, "[p]ardoxically," plaintiff testified "she does not like taking

21  narcotic medication, despite her history of using prescription medications."  (AR 22, 51-52.)

22  Plaintiff avers the record as a whole makes clear she "did have a fear of addictive substances

01 and minimized use as much as possible."  (Dkt. 12 at 13.)   However, plaintiff fails to cite any

02 such records in support.   (*Id*. (citing AR 52-54 (plaintiff's testimony).)

03      The ALJ noted plaintiff's testimony she is allergic to Vicodin, despite medical records

04 showing prescriptions of that medication.  (AR 22, 51-53, 251, 261.)  Plaintiff's various

05 arguments challenging this finding lack merit.   For instance, plaintiff's contention she "could

06 have misunderstood the judge[]" is plainly contradicted by the record.  (AR 53 ("Q.  Okay,

07 and then you were also taking Vicodin.  A.  I'm allergic to Vicodin, so that might be a

08 mistype.  Q.  Well, I don't think it's a mistype, I mean, . . .  They prescribed Vicodin.  This

09 was back in '05.  A.  No.  Q.  For back pain?  A.  I can't take Vicodin at all."))

10      The ALJ contrasted plaintiff's assertion she isolates in bed for extended periods, hiding

11 under her pillow and covers, with her testimony she sees and shops with a friend on a regular

12 basis, her report of "no problems interacting with others," and with her ability to go to

13 appointments, grocery shopping, and the library.  (AR 22.)   The ALJ also contrasted

14 plaintiff's allegation of severe problems with sleep, insomnia, and nightmares, with the fact that

15 "she reads horror novels, [paranormal stories,] romance novels, true ghost stories, novels about

16 vampires and mystery novels – and spends time watching violent movies."  (*Id*. (citing AR

17 615, [485-88]).)  She reasoned:  "It is difficult to believe [plaintiff's] report of disabling

18 nightmares, fear of the dark, and other sleep disturbance when she is able to read and view this

19 kind of content."  (*Id*.)  While plaintiff takes a different view of this evidence, she fails to

20 demonstrate the ALJ's consideration of the evidence and resulting conclusion was not rational.

21 "One strong indication of the credibility of an individual's statements is their consistency, both

22 internally and with other information in the case record." SSR 96-7p.   The consideration of this

01  evidence, as well as the other factors, inconsistencies, and contradictions noted by the ALJ,

02  serves as additional clear and convincing reasons for the ALJ's credibility determination.

03  F.    <u>Work History</u>

04        The ALJ also addressed an issue regarding plaintiff's work history:

05        Regarding her work history, the claimant strongly denied ever working as a
          social worker for Child Protective Services (CPS), despite multiple contrary
06        reports in the record ([AR 279, 486]).   Her credibility is further undermined by
          her testimony that she worked under the table in the past.   In addition, the
07        claimant admitted to a history of shoplifting, a crime that weakens her veracity.
          Given this history, the claimant's testimony regarding her work history is
08        suspect.

09  (AR 22.)   Plaintiff fails to undermine the ALJ's consideration of this evidence.

10        The record reflects plaintiff reported to two different evaluating physicians, Drs. Sohn

11  and Ford, that she previously worked for CPS.   (AR 279, 486.)   Any attempt on plaintiff's

12  part to imply Dr. Ford obtained this information from reviewing Dr. Sohn's prior evaluation

13  (*see* Dkt. 12 at 14) should be rejected given the inclusion of far greater detail in Dr. Ford's

14  report.   (AR 279 (March 2010 report from Dr. Sohn:   "She used to work in [CPS] but is

15  presently not working.") and AR 486 (May 2010 report from Dr. Ford:   "Claimant states she

16  worked for two years in California for CPS, working with developmentally delayed children.

17  She states that she quit in 1990 because she got married and hated the job."))   These reports,

18  rather than demonstrating a reliance on only a slim quantum of evidence and "[s]heer disbelief"

19  (Dkt. 12 at 14), provide substantial evidence support for the ALJ's conclusion.   The Court

20  further notes that plaintiff does not address the ALJ's observations as to working under the table

21  or shoplifting.

22        Plaintiff, in sum, fails to demonstrate error in the ALJ's consideration of this evidence

01  as an additional basis for finding her less than fully credible.   The ALJ's credibility finding

02  should be upheld.[4]

03                                          Lay Witness Evidence

04          Lay witness testimony as to a claimant's symptoms or how an impairment affects ability

05  to work is competent evidence and cannot be disregarded without comment.   *Van Nguyen v.*

06  *Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996).   The ALJ can reject the testimony of lay

07  witnesses only upon giving germane reasons.   *Smolen*, 80 F.3d at 1288-89.

08          The ALJ considered a lay statement provided by plaintiff's mother, Kathy Walters,

09  noting her report plaintiff "is able to run errands, perform household chores, and engage in her

10  hobbies[,]" but "has problems standing, walking, and completing tasks."   (AR 24 (discussing

11  AR 193-200).)   She found:   "Overall, Ms. Walters' statements do not establish the presence of

12  any disabling impairment.   Her comments are given little weight, as her statements regarding

13  the claimant's limitations are not consistent with the claimant's demonstrated abilities and the

14  medical evidence of record."   (*Id.*)

15          Both inconsistency between a lay statement and evidence of a claimant's activities, and

16  inconsistency between a lay statement and the medical record constitute specific and germane

17  reasons for discrediting lay testimony.   *See Carmickle*, 533 F.3d at 1164 (activities), and

18  *Bayliss*, 427 F.3d at 1218 (medical evidence).   Also, to the extent plaintiff alleges the ALJ was

19  required to address each and every statement offered by the lay witness, this argument should

20  be rejected.   Indeed, the failure to address lay testimony in its entirety may be deemed

21

22          4 As plaintiff observes, any error in the consideration of the social worker job as past relevant
work at step four, such as its performance more than fifteen years prior to the ALJ's decision, is
harmless.   The ALJ determined plaintiff could not perform the job and proceeded to step five.

REPORT & RECOMMENDATION
PAGE -22

01  harmless where it is "'inconsequential to the ultimate nondisability determination.'"  *Molina*,

02  674 F.3d at 1115 (cited sources omitted).   "Where lay witness testimony does not describe any

03  limitations not already described by the claimant, and the ALJ's well-supported reasons for

04  rejecting the claimant's testimony apply equally well to the lay witness testimony," the failure

05  to address the lay testimony may be deemed harmless.  *Id*. at 1117-22.   In this case, the ALJ's

06  reasoning provided in relation to plaintiff's testimony applies equally well to the testimony

07  offered by Ms. Walters.

08        In addition, as the Commissioner observes, the ALJ accounted for a number of

09  limitations attested to by Ms. Walters in the RFC, including limitations to light work, with only

10  superficial interactions with coworkers and the public.   The ALJ further identified both light

11  and sedentary jobs plaintiff could perform at step five.   Plaintiff, for all of these reasons, fails

12  to demonstrate error in the consideration of the lay testimony.

13                              Medical Opinion Evidence

14        Plaintiff argues error in the failure to include all limitations supported by substantial

15  evidence in the RFC.   She points to improperly excluded limitations assessed by Dr. Jabbusch,

16  Dr. Allison Shigaki, and Dr. Knapp, and argues error in the reliance on the opinions of Dr. Ford.

17        In general, more weight should be given to the opinion of a treating physician than to a

18  non-treating physician, and more weight to the opinion of an examining physician than to a

19  non-examining physician.  *Lester*, 81 F.3d at 830.   Where not contradicted by another

20  physician, a treating or examining physician's opinion may be rejected only for "'clear and

21  convincing'" reasons.  *Id*. (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

22  Where contradicted, a treating or examining physician's opinion may not be rejected without

01  "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

02  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

03          The RFC encompasses the most a claimant can do considering his or her limitations or

04  restrictions.   *See* SSR 96-8p.   The ALJ must consider the limiting effects of all of plaintiff's

05  impairments, including those that are not severe, in determining her RFC.   20 C.F.R. §§

06  404.1545(e), 416.945(e); SSR 96-8p.   However, an RFC assessment need not account for

07  limitations or impairments the ALJ properly rejected.   *See Bayliss*, 427 F.3d at 1217-18.

08  A.      Dr. Mark Jabbusch

09          Dr. Jabbusch completed a "Fibromyalgia [RFC] Questionnaire" on May 31, 2011,

10  assessing a variety of limitations.   (AR 632-36.)   He opined plaintiff would miss more than

11  four days per month and is incapable of even low stress jobs.   (AR 633, 635.)   The ALJ gave

12  no weight to this opinion, finding it not consistent with the medical evidence and plaintiff's

13  proven capabilities, and noting the absence of any evidentiary basis for the analysis.   (AR 23.)

14  Because the record contained contradictory opinions as to plaintiff's physical limitations from

15  reviewing physicians (*see* AR 20, 22, 484, 601), the ALJ was required to provide specific and

16  legitimate reasons for rejecting the opinions of Dr. Jabbusch.

17          Plaintiff points to the observation on the questionnaire that the opinion was provided

18  based on "one month" of treatment.   (AR 632.)   Yet, as the Commissioner observes, the

19  record does not contain any treatment notes or clinical test results revealing either the nature of

20  this physician's working relationship with plaintiff or providing support for the opinions.

21  "The ALJ need not accept the opinion of any physician, including a treating physician, if that

22  opinion is brief, conclusory, and inadequately supported by clinical findings."   *Thomas*, 278

REPORT & RECOMMENDATION
PAGE -24

01  F.3d at 957.   *See also Batson v. Commissioner*, 359 F.3d 1190, 1195 (9th Cir. 2004) (a treating

02  physician's opinions may be discounted when it is "in the form of a checklist, did not have

03  supportive objective evidence, was contradicted by other statements and assessments of [the

04  claimant's condition], and was based on [the claimant's] subjective descriptions of pain.")

05  The ALJ, as such, properly pointed to the absence of any evidentiary basis for the opinions.

06      An ALJ may further properly reject a physician's opinion as inconsistent with the

07  medical record, *Tommasetti*, 533 F.3d at 1041, and with a claimant's level of activity, *Rollins*,

08  261 F.3d at 856.   In this case, as discussed above, the ALJ pointed to contradictory medical

09  evidence in the record and other evidence reflecting a greater level of activity and ability than

10  that alleged by plaintiff.   The ALJ, therefore, proffered additional specific and legitimate

11  reasons for rejecting the opinions of Dr. Jabbusch by deeming this opinion evidence not

12  consistent with the medical record and plaintiff's proven capabilities.

13  B.   <u>Dr. Allison Shigaki</u>

14      The record also contains a form completed by Dr. Shigaki on June 30, 2011 and

15  identifying a variety of limitations.   (AR 638-41 (copies of same form, one with handwritten

16  name below signature).)   The ALJ gave little weight to the opinions of Dr. Shigaki:

17          Dr. Shigaki concluded that the claimant would miss about four days per month,
            is unable to maintain attention for two hours [at] a time, and has serious
18          limitations in many other areas of functioning.   While Dr. Shigaki has treated
            the claimant, it is noted that this treatment started one month prior to her June
19          2011 assessment.   These findings are not consistent with the findings of Dr.
            Ford and are not consistent with the claimant's reports of her daily activities.
20          These show that she is able to concentrate on many tasks, such as reading,
            watching movies and various hobbies.   She is also able to go out in public for
21          errands and shopping [and] to visit the library.   The evidence shows that the
            claimant is more capable than found by Dr. Shigaki.

22

REPORT & RECOMMENDATION
PAGE -25

01 | (AR 23.)

02 |     Plaintiff argues that ALJ improperly relied on the opinions of Dr. Ford.   The ALJ gave

03 | the "most weight" to the opinions of Dr. Ford, finding her statement that plaintiff "'is likely to

04 | maintain regular attendance and work consistently'" was supported by her comprehensive

05 | mental health evaluation and consistent with the medical evidence of record.   (AR 22.)

06 | Plaintiff notes that the quoted portion of Dr. Ford's opinion was accompanied by the following:

07 |     In terms of performing work activities consistently and maintaining regular
    attendance, this is more difficult to answer.   As she describes her symptoms,

08 |     she is likely to be able to maintain regular attendance and work consistently;
    however, her lack of increasing the scope of her activities since November is

09 |     concerning for the possibility of a higher level of anxiety in crowds and in new
    situations than she acknowledges.

10 |

11 | (AR 489.)   Plaintiff, however, fails to acknowledge Dr. Ford's next statement:   "That said,

12 | consistent, structured, productive activity is likely to assist her in maintaining her sense of self

13 | as well as mood, especially if the claimant receives appropriate medication and therapeutic

14 | interventions for her PTSD symptomatology."   (*Id*.)

15 |     Plaintiff also fails to acknowledge that the ALJ assessed limitations in plaintiff's ability

16 | to interact with the public and coworkers consistent with Dr. Ford's observations as to anxiety

17 | in crowds and new situations.   (AR 19.)   While plaintiff points to her reports as to her

18 | limitations, the observations of her mother, and various other references in the record, she fails

19 | to demonstrate the ALJ erred in addressing that evidence.   Plaintiff also notes that Dr. Ford's

20 | opinion did not stem from treatment and describes it as based on a "very short clinical interview

21 | without administration of any tests."   (Dkt. 12 at 20.)   However, as the ALJ observed, Dr.

22 | Shigaki had treated plaintiff for only one month prior to the completion of the evaluation.

REPORT & RECOMMENDATION
PAGE -26

01  Furthermore, the evaluation provided by Dr. Ford is, particularly as compared to the form

02  completed by Dr. Shigaki, appropriately described as reflecting a comprehensive mental health

03  evaluation.  (*Compare* AR 485-89, *with* AR 640-41.)

04  　　　　"The ALJ is responsible for resolving conflicts in the medical record." *Carmickle,* 533

05  F.3d at 1164.  When evidence reasonably supports either confirming or reversing the ALJ's

06  decision, the Court may not substitute its judgment for that of the ALJ.  *Tackett v. Apfel*, 180

07  F.3d 1094, 1098 (9th Cir. 1999).  Here, considering Dr. Ford's opinion and all of his qualifying

08  remarks as a whole, as well as the remainder of the record, the ALJ's interpretation of the

09  opinion evidence from Dr. Shigaki and Dr. Ford can be deemed rational.  The ALJ provided

10  specific and legitimate reasons for the rejection of Dr. Shigaki's opinions by pointing to

11  contrary medical opinion evidence and evidence of plaintiff's inconsistent activities,

12  *Tommasetti*, 533 F.3d at 1041, *Rollins*, 261 F.3d at 856, and her rational interpretation of the

13  evidence should be upheld.

14  C.　　Dr. Geordie Knapp

15  　　　　The ALJ gave little weight to Dr. Knapp's opinions.  (AR 23 and AR 606-18.)  She

16  gave little weight to an assigned GAF of 45 "because Dr. Knapp considered non-mental health

17  issues in his rating, such as 'unemployed, inadequate finances, no health insurance.'"  (AR 23

18  (quoting AR 608 and AR 615).)  The ALJ also gave little weight to Dr. Knapp's opinions of

19  severe limitations in plaintiff's ability to work with the public or tolerate the pressures and

20  expectations of the workplace, and additional significant limitations, for a number of reasons:

21  (1) inconsistency with the opinions of Dr. Ford; (2) inconsistency with plaintiff's demonstrated

22  level of functioning and activities of daily living; (3) the impression the assessed limitations

REPORT & RECOMMENDATION
PAGE -27

01  were based on plaintiff's subjective reports, not objective examination findings; (4)

02  inconsistency with the results of mini-mental status examinations conducted by Dr. Knapp; and

03  (5) the observation that many of Dr. Knapp's 2010 findings "are word-for-word or nearly

04  word-for-word copies of his 2009 assessment, suggesting that he simply copied his old findings

05  into the more recent assessment[,]" making "his opinions less persuasive."   (AR 23-24.)

06        Plaintiff first takes issue with the ALJ's rejection of the GAF score, pointing to Dr.

07  Knapp's explanation for the basis of his rating as referring to, *inter alia*, plaintiff's reports of

08  physical and sexual abuse by her father from childhood into her early teens, assessment of

09  learning disorders in grade school, an abusive relationship lasting over twenty years, a first

10  major depressive episode over twenty years ago following her son's death, a diagnosis with

11  bipolar disorder eight years ago, her minimal job skills, and the inability "to be around others

12  for sustained periods without getting verbally angry."   (AR 608, 615.)   Plaintiff argues "[t]his

13  shows Dr. Knapp's GAF rating is based on factors related to [her] mental health impairments,

14  contrary to the ALJ's conclusion."   (Dkt. 12 at 21.)   However, the ALJ did not assign little

15  weight to the GAF score on this basis.   She, instead, assigned it little weight given that it *also*

16  included consideration of non-mental health issues, including unemployment, inadequate

17  finances, and absence of health insurance.   (AR 23 and AR 608, 615.)   Plaintiff does not

18  demonstrate error in the ALJ's reasoning.  *See generally Vargas v. Lambert*, 159 F.3d 1161,

19  1164 n.2 (9th Cir. 1998) (GAF score is a "rough estimate" of an individual's psychological,

20  social and occupational functioning, and is used to assess the need for treatment).

21        The ALJ also provided specific and legitimate reasons by pointing to the contrary

22  opinion evidence from Dr. Ford, and the evidence of inconsistency with plaintiff's

REPORT & RECOMMENDATION
PAGE -28

01  demonstrated level of functioning and activities of daily living.   *Tommasetti*, 533 F.3d at 1041,

02  and *Rollins*, 261 F.3d at 856.   Additionally, and as stated above, the ALJ properly rejected the

03  opinions of Dr. Knapp, in part, as based on relying substantially on plaintiff's properly

04  discredited subjective complaints, *Tommasetti*, 533 F.3d at 1041, and the internal inconsistency

05  between the limitations assessed and the testing results, *Bayliss*, 427 F.3d at 1216.   *See also*

06  *Thomas*, 278 F.3d at 957 ("The ALJ need not accept the opinion of any physician, including a

07  treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical

08  findings."); *Morgan*, 169 F.3d at 603 (ALJ appropriately considers internal inconsistencies

09  within and between physicians' reports).   While plaintiff notes the inclusion of Dr. Knapp's

10  own observations of symptoms and behaviors, the ALJ's interpretation of this evidence is

11  supported by a review of both reports.   (*See* AR 606-18.)

12          Finally, the ALJ accurately and appropriately pointed to the marked similarity between

13  the two evaluations.   *See generally Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)

14  ("In reaching his findings, the law judge is entitled to draw inferences logically flowing from

15  the evidence.") (cited sources omitted).   Plaintiff fails to demonstrate error in this or in any

16  other reasons proffered for the decision to accord little weight to the opinions of Dr. Knapp.

17                                          CONCLUSION

18          For the reasons set forth above, this matter should be AFFIRMED.

19          DATED this 8th day of October, 2013.

20

21

Mary Alice Theiler

22                                          Chief United States Magistrate Judge

REPORT & RECOMMENDATION
PAGE -29